IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

YOLANDA ARAGON,

    Plaintiff,

v.                                                              Civ. No. 05-585 RLP/WPL

MARY GAUTREAUX, and JENNA JOHNSON, and
KRIS FORD, in their individual and official capacities,
and the GOVERNING BOARD OF EDUCATION OF
ALBUQUERQUE TECHNICAL VOCATIONAL INSTITUTE,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the court on the parties' cross motions for summary judgment. In her First Amended Complaint [Doc. 20], Plaintiff Yolanda Aragon ("Aragon") alleges violations of 42 U.S.C. § 1983; two state law contract claims; and municipal and supervisory liability claims against Defendant Governing Board and the individual Defendants in their official capacities.[1] Defendants move for summary judgment based on qualified immunity or, alternatively, on the merits. Aragon seeks partial summary judgment on Count I of her First Amended Complaint, violation of her right to procedural due process under the Fourteenth Amendment. The Court heard oral arguments on July 18, 2006.

FACTS

The following facts are not in dispute. After completing prerequisite course-work at Albuquerque Technical-Vocational Institute (TVI) Aragon enrolled in the Registered Nurse ("RN") program at TVI in 2004. She was in her last semester of that program in

---

[1] Plaintiff's Response to Defendant's Motion for Summary Judgment [Doc. 37], note 1, states that she is abandoning her substantive due process and equal protection claims, which are Counts II and III of her First Amended Complaint.

January, 2005. In February, 2005 Aragon was taking a test and was stopped by a proctor after completing the examination and asked to hand over a piece of paper to the proctor. She complied. A testing coordinator told Aragon to wait outside of the testing center. Aragon was then called into an office with another student and the two students met with Defendant Mary Gautreaux, who informed them that a third student had accused them of cheating. The identity of this third student was not disclosed.

After this meeting, Aragon and the other student went to see an associate dean who advised them to see the Dean of Students, Defendant Kris Ford. They made an appointment for the next day. That evening, Aragon found her access to TVI's website for students had been revoked; the next day she found out her appointment with Ford had been canceled. Aragon then went to see two nursing instructors who had prepared notices entitled "Advisement of Academic Dishonesty" and "Program Suspension Notice." The notices advised Aragon and the other student that they had been observed "sharing notes, crib sheet[s] and documentation of test questions." The notices also informed them that if the allegations were true, they would receive a zero on the midterm exam and also be suspended from the nursing program for one year.

During the next two days Aragon and the other student met with various individuals (Defendants herein and/or other TVI personnel), asked about the charges against them and advised TVI personnel they had not been presented with the evidence against them. On February 18, an associate dean advised Aragon he had met with Defendant Gautreaux and others and believed the two students had cheated on the examination, warranting a zero on the test and the one year suspension from the program.

Aragon appealed to Defendant Jenna Johnson, the Instructional Dean. Johnson informed Aragon of the evidence against her, but did not provide her with copies of the statements or other evidence collected. Johnson upheld the midterm grade of zero and the suspension.

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed.R.Civ.P. 56(c).

ISSUES PRESENTED

Count I:  Procedural Due Process

Because the individual Defendants have raised qualified immunity as a defense to the § 1983 claims against them, the Court must first determine whether Aragon has asserted a violation of a constitutional right and then whether that right was clearly established such that a reasonable person standing in the defendant's position would have known that her conduct violated that right. *Maestas v. Lujan*, 351 F.3d 1001, 1007 (10th Cir. 2003).

Aragon has asserted a violation of her due process rights under the Fourteenth Amendment, which provides that no state shall "deprive any person of life, liberty, or property, without due process of law." An actionable claim under the Due Process Clause first requires a property interest and such interests are determined by state law. *Watson v. University of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996).

> The Fourteenth Amendment's procedural due process protections apply only to an individual deprived of a recognized property or liberty interest. *Board of Regents v.*

3

> *Roth*, 408 U.S. 564, 569 (1972). Property interests are created not by the Constitution itself, but may be defined by independent sources such as state statutes, regulations, municipal ordinances, *university rules*, and even express or implied contracts. *Id.* at 577."

*Anglemyer v. Hamilton County Hosp.*, 58 F.3rd 533, 536 (10th Cir. 1995) (parallel citations omitted) (emphasis added).

There are no New Mexico statutes guaranteeing a property interest in post-secondary education.[2] However, TVI is a state-funded institution open to all who meet its academic qualifications.[3] TVI provides all students with a Manual of Codes and Policies, which includes the following:

> By enrolling at TVI, a student . . . retain[s] all rights guaranteed under the Constitution of the United States and the state of New Mexico and any student alleged to have engaged in any misconduct shall have the right of due process . . . .

---

[2] The Tenth Circuit Court of Appeals has not definitively answered the question. *See Dixon v. Regents of the University of New Mexico*, 242 F.3d 388, 2000 WL 1637557, \*\*3 (unpublished decision) and *Trotter v. Regents of the University of New Mexico*, 219 F.3d 1179 (10th Cir. 2000). In *McGee v. Schoolcraft Comm. College*, 167 Fed.Appx. 429 (6th Cir. 2006) (unpublished decision) the court noted that "[t]he issue of whether a student's interest in continued enrollment at a post-secondary institution is protected by procedural due process has not been resolved" and that courts routinely avoid the issue where possible. *Id.* at 437. This Court has found no case concerning a property interest in continued education at Albuquerque's Technical Vocational Institute.

[3] Chapter 21 of the New Mexico Statutes Annotated concerns educational institutions in the state. *See* NMSA (1978) §§ 21-1-1 *et seq.* The Administrative Code for the provisions covering technical and vocational institutions, §§ 21-16-1 to -24, prohibits discrimination on the basis of "gender, marital or parental status, race, religion, sexual preference, age, national origin or disabilities." N.M.Admin.Code 6.33.2.9(C)(2)(c). New Mexico residency is not a requirement. Although not as specific as C.R.S. § 23-50-109, cited *infra* in text, the clear implication of these provisions is that enrollees, upon payment of their tuition, are entitled to the courses offered subject to any reasonable academic requirements.

4

Manual of Codes and Policies, Plaintiff's Exhibit A to Motion for Partial Summary Judgment, at p. 334, ¶ (I)(C).

In *Gossett v. State of Oklahoma ex re. Board of Regents for Langston Univ.*, 245 F.3d 1172 (10th Cir. 2001), a student was involuntarily removed from the University's nursing program. Analyzing his procedural due process claim, the court stated, "we note that Mr. Gossett had a property interest in his place in the Nursing School program that is entitled to due process protection under the Constitution." *Id.* at 1180. The court cited *Harris v. Blake*, 798 F.2d 419, 422 (10th Cir. 1986), *cert. denied*, 479 U.S. 1033 (1987) for that proposition. *Harris* held that a graduate student had a property interest in secondary education by virtue of a Colorado statute (C.R.S. § 23-50-109) that provided for open education in all of its colleges to residents of the state who pay tuition. 798 F.2d at 422. The *Gossett* court made no mention of any Oklahoma statutes. *Harris* also cited to *Gaspar v. Bruton*, 513 F.2d 843 (10th Cir. 1974), which held that payment of the tuition fee to enroll in an Oklahoma technical vocational institute's nursing program vested that student with a property interest. *Gaspar*, 513 F.2d at 849. Again, no mention was made of the state law basis for that property interest.

Based on the foregoing facts and authorities, the Court finds that Aragon has asserted a property interest in her continued enrollment at TVI, a state-funded institution: she had previously met all of the academic requirements, she was one semester from graduation, she had paid her tuition, and she was entitled to the policies set forth in the Manual of Codes and Policies, guaranteeing her state and federal Constitutional rights .[4]

---

[4] An analogous area of law is New Mexico's willingness to allow handbooks to alter the terms of employment. "In New Mexico, employment contracts are generally for an

The next question to be decided is what the Due Process Clause requires. Federal constitutional law determines whether the procedures offered were adequate. *Hulen v. Yates*, 322 F.3d 1229, 1247 (10th Cir. 2003). This inquiry turns on whether Aragon received an academic or a disciplinary sanction: an academic sanction does not require the panoply of procedures required for a disciplinary sanction. *Ornelas v. Regents of the University of New Mexico*, 229 F.3d 1164, 2000 WL 1179773, \*\*4 (10th Cir. 2000) (unpublished opinion). In *Allahverdi v. Regents of the University of New Mexico*, -- F. Supp.2d --, 2006 WL 1313807 (D.N.M. 2006) the court reviewed several cases involving the academic versus disciplinary designation and determined that an academic suspension involves conduct relating to the student's qualifications in his or her chosen field, while disciplinary dismissals "are objective in nature and relate to rules of conduct rather an a student's professional abilities." *Id.* at --, 2006 WL 1313807, \*14.

The court finds that cheating, *i.e.*, "academic dishonesty," is based on conduct, is disciplinary in nature, and therefore requires greater procedural protection than an academic suspension. *See, e.g., Slaughter v. Brigham Young University*, 514 F.2d 622, 623-24 (10th Cir.), *cert. denied*, 423 U.S. 898 (1975). *Jaska* v. *Regents of the University of Michigan*, 597 F. Supp. 1245, 1248 n.2 (1984), *aff'd*, 787 F.2d 590 (6th Cir. 1986).

A disciplinary suspension longer than 10 days entitles a student to oral or written notice of the charges and, if the charges are denied, an explanation of the evidence and

---

indefinite period and deemed to be at-will." *Miller v. Automobile Club of New Mexico*, 420 F.3d 1098, 1128 (10th Cir. 2005). One exception to the at-will doctrine is where an employee handbook alters the employer's ability to discharge the employee without cause. *Id.* (citing New Mexico cases).

6

an opportunity for the student to present her side of the story. *Watson v. Beckel*, 242 F.3d 1237 (10th Cir. 2001) (citing *Goss v. Lopez*, 419 U.S. 565, 581 (1975)). In *Jaska*, the court stated that the procedures required were adequate notice and a meaningful opportunity to present facts to an impartial panel. *Jaska*, 597 F. Supp. at 1219. In *Slaughter*, the court found the constitutional requirements to be an adequate hearing and meaningful opportunity to participate, which included the student's right to present his position and hear the witnesses against him. 514 F.2d at 624.

Based on the foregoing authorities and the facts of this case, it is clear that Aragon did not receive the requisite due process. The evidence presented by the parties in their cross motions for summary judgment indicate that charges were hurriedly written up by individuals who were acting without first-hand knowledge. When Aragon met with Johnson, she was not presented with the evidence against her. Aragon was neither allowed to present her side of the story in a meaningful manner, nor allowed to hear witnesses against her. She was not allowed to cross-examine those with first-hand knowledge. Aragon was entitled to notice of the charges, an orderly presentation of all of the evidence, and a meaningful opportunity to present her side of the story to an impartial panel.

Having determined that Aragon has stated a violation of her Fourteenth Amendment rights, the next question is whether the individual defendants are entitled to qualified immunity. The answer to that question turns on whether Aragon's right to procedural due process was clearly established such that a reasonable person standing in the defendant's position would have known that his or her conduct violated that right. *Maestas,* 351 F.3d

at 1007.

Defendants Gautreaux, Johnson and Ford were sued in their individual and official capacities. "Personal or individual capacity suits 'seek to impose personal liability upon a government official for actions he takes under color of state law,' while an official capacity suit is 'only another way of pleading an action against an entity of which an officer is an agent.'" *Johnson v. Board of County Commissioners*, 85 F.3d 489, 492 (10th Cir.) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), *cert. denied sub nom*, *Green v. Kane*, 519 U.S. 1042 (1996). Qualified immunity is a defense to individual capacity lawsuits. *Id*. For the purposes of qualified immunity, we only examine the individual Defendants in their individual capacities. The Court has found that Aragon's Fourteenth Amendment right to due process was violated and now determines whether any of the three individual Defendants were responsible for that violation.

The salient facts are not disputed, only the inferences to be drawn therefrom. The record indicates Defendant Gautreaux had limited involvement with Aragon or her suspension. Gautreaux, who first learned about the allegation of cheating, met with Aragon immediately thereafter and later found a piece of paper between Aragon's and another student's computer. Gautreaux apparently wrote to Ford or Johnson and set forth her findings, but had no other involvement with the sanctions imposed against Aragon.[5] An investigation of allegations is not a violation of the Fourteenth Amendment. The Court

---

[5] At oral arguments, Aragon contested dismissal of Gautreaux due to her substandard or inadequate investigation. Even if that were true, the malfeasance would not be a proximate cause of deprivation of Aragon's rights. Indeed, it would put more responsibility on Ford and Johnson to determine whether an adequate investigation had taken place.

finds that Gautreaux's involvement did not violate Aragon's constitutional rights and so she is not individually liable to Aragon.

With regard to Ford and Johnson, the Court reaches a different result. Defendant Ford is the Dean of Students at TVI. On February 18, 2005 she wrote to Aragon to inform her that she would receive a zero on the mid-term examination and a one-year suspension from the nursing program. *See* Plaintiff's Motion for Summary Judgment, ¶ 48 & Exhibit Q thereto. This letter was written five days *before* Dean Johnson met with Aragon "to hear her side of the story." *Id.* at ¶ 55. At the time of February 23, 2005 meeting with Aragon, Johnson had in her possession all of the statements, affidavits, and other documentary evidence collected, but did not show them to Aragon. *Id.* at ¶ 63. On February 24, 2005, Dean Johnson wrote to Aragon to advise her of all of the evidence that had been collected and to inform Aragon that the decision was final and no more appeals would be allowed. Exhibit U.

Based on the foregoing, Ford and Johnson were directly involved and directly responsible for Aragon's one year suspension without the due process protections to which she was entitled. The Court's next inquiry is to whether Ford and Johnson are entitled to qualified immunity, *i.e.*, would reasonable people in their positions have known their conduct violated Aragon's rights. In arguing that they are entitled to qualified immunity, Defendants assert that (1) Aragon was not expelled from TVI, only from the nursing program; and (2) TVI's policy indicates that cheating is an academic, not a disciplinary, action.

The Court finds the first argument without merit. In *Ornelas v. Regents of the*

9

*University of New Mexico*, 229 F.3d 1164, 2000 WL 1179773 (10th Cir. 2000), the plaintiff had been expelled from one class in a graduate level course in the Department of Education.  In analyzing her due process claim, the court stated that being expelled from one class was manifestly different from expulsion from an entire program, such as the nursing program in *Harris*, *supra*.  2000 WL 1179773, **5.  Aragon was pursing a career and had completed the necessary prerequisites.  She was in her last semester of her chosen profession, and to say she could have merely transferred into another vocation is tantamount to suspension from the institution.

The court has already determined that academic dishonesty is disciplinary, not academic, in nature because it involves conduct, not abilities.  There are a substantial number of cases, cited earlier in this opinion, that stand for that proposition, and Defendants should have been aware, as any reasonable person would have been, that cheating is a disciplinary infraction because it is based on conduct, not ability.  *See, e.g.*, *Slaughter*, *supra*, at 6; *Siblerud v. Colorado State Bd. of Agric.*, 896 F. Supp. 1506 (D. Colo. 1995).  *See generally*, Pavela, *Disciplinary and Academic Decisions Pertaining to Students: A Review of the 1995 Judicial Decisions*, 23 J. of College and University Law 391 (1997) (noting schools' attempts to label misconduct as academic rather than disciplinary to avoid the notice and hearing required by due process).[6]  The Court finds that deans and educators should have been on notice since the Supreme Court's 1975 *Goss* decision

---

[6] The Court notes that TVI's Manual of Codes and Policies, Plaintiff's Exhibit A, is a model of due process for disciplinary proceedings, all of which are based on conduct. *See* Manual at p. 337.  The student is entitled to notice of the charges, a hearing, an opportunity to be heard, and an appeal process.  *Id*.

that suspensions in excess of 10 days requires more than a summary assessment of guilt.

Based on the foregoing, the Court finds: (1) Aragon has asserted a violation of a constitutional right; (2) Aragon has a property interest in her continued education at TVI; (3) Aragon is thus entitled to the protections of the Fourteenth Amendment; (4) Individual Defendant Gautreaux had no role in depriving Aragon of due process; (5) Individual Defendants Johnson and Ford deprived Aragon of her Fourteenth Amendment rights; and (6) Individual Defendants Johnson and Ford are not entitled to qualified immunity because they should have known of the overwhelming weight of judicial opinions that cheating is a disciplinary and not an academic sanction, thereby entitling Aragon to the due process requirements of notice, a hearing, and an opportunity to be heard, all of which procedures are fully set out in TVI"s Manual of Codes and Policies.

Accordingly, Aragon is entitled to entry of summary judgment in her favor and against Defendants Johnson and Ford in their individual capacities on Count I of her First Amended Complaint. Aragon's motion is denied as to Defendant Gautreaux in her individual capacity.

<u>Counts III and IV: Breach of Contract and Covenant of Good Faith and Fair Dealing</u>

Considering the pleadings of the parties and after hearing oral arguments, the court finds that there remain disputed issues of material fact for these causes of action and Defendants are not entitled to summary judgment on these counts.

<u>Count V: Municipal and Supervisory Liability Against Defendant Governing Board</u>

The court agrees with Defendants that Aragon has failed to come forward with evidence sufficient to create an issue of fact for trial. Aragon merely argues that the Board

is liable for Defendants' failure to afford Aragon due process.

A municipality can only be liable under § 1983 if it took "action pursuant to official municipal policy of some nature [that] caused a constitutional tort." *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Municipal liability cannot be premised on the acts of its employees; liability must be predicated on an official custom, practice, or policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-81 (1976).  A "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

Aragon's response to Defendant's Motion for Summary Judgment fails to show any custom or policy of the Governing Board which would make it liable and has failed to provide the Court with any facts indicating the required "direct causal link."  Necessarily, the official capacity claims against Defendants Gautreaux, Johnson and Ford also fail. Accordingly, Defendants are entitled to summary judgment on Count V of the First Amended Complaint.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Plaintiff's Motion for Partial Summary Judgment  [Doc. 33] on Count I of her First Amended Complaint is granted as to Defendants Ford and Johnson in their individual capacities;

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment on Count I of her First Amended Complaint is denied as to Defendant Gautreaux in her individual capacity;

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment  for

Qualified Immunity [Doc. 30] is denied as stated herein;

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment is granted as to Count V of the First Amended Complaint as against Defendant Board and all individual Defendants in their official capacities; and

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment on Counts III and IV (Breach of Contract and Breach of the Covenant o f Good Faith and Fair Dealing) is denied as stated herein.

IT IS SO ORDERED.

_____
Richard L. Puglisi
United States Magistrate Judge
(sitting by designation)